and he is in no position to ask that the court strain any rule in his favor.

It follows that the order should be reversed, with $10 costs and disbursements, and the motion be denied, with $10 costs, and the injunction be dissolved. All concur.

---

(74 App. Div. 224.)

FROUNFELKER v. DELAWARE, L. & W. R. CO.

(Supreme Court, Appellate Division, First Department. July 8, 1902.)

1. MASTER AND SERVANT—RAILROADS—NEGLIGENCE—RULES OF ROAD—PRE-SUMPTION OF KNOWLEDGE.

Where, in an action against a railroad for the death of a freight conductor owing to alleged negligence of defendant, the defense is contributory negligence, consisting of a violation of defendant's rules, a showing that time-tables containing such rules were constantly issued by defendant to conductors, and that certain officials of defendant were especially charged with the duty of delivering such tables to the conductors, whose duty it was to receive and run their trains by them, was presumptive evidence that deceased had received the time-tables and was familiar with the rules.

2. SAME—CONTRIBUTORY NEGLIGENCE—EVIDENCE.

The rules of a railroad provided that, when a train should be required to stop between stations, the flagman should immediately go back half a mile with danger signals. In an action for the death of a railroad conductor, owing to his train having been run into by a following train while his train was standing between stations, the evidence of plaintiff's witnesses showed that, at the time the following train appeared around the curve, in the rear of deceased's train, it was from 5 minutes to 12 minutes after the train had stopped, and that the flagman was first seen about 200 feet behind deceased's train. The engineer of the following train testified that he did not see any brakeman from deceased's train, and the fireman testified that he saw the brakeman as they rounded the curve, between 200 and 300 feet from deceased's train. The evidence showed that the following train was stopped as quickly as possible, and the collision was so slight that only the caboose of the freight train was injured, and the headlight of the colliding locomotive was not broken. Held, that deceased was guilty of contributory negligence.

3. SAME—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF.

In an action for death by wrongful act, the burden is on the plaintiff to prove that deceased was free from contributory negligence.

4. SAME—NEGLIGENCE—EVIDENCE.

A freight conductor, while sitting in the caboose of his train, which was standing, was killed, owing to his train being run into from behind by another train. The caboose at the end next to the car was furnished with bumpers, but those of the car in front of the caboose were higher than the bumpers of the caboose, though there were 4½ inches of the bumpers of the two cars which met. In an action for the death of a conductor, there was no evidence that if the tops of the bumpers had been on a level the same result would not have followed the collision. Held, that the fact that the bumpers were not on a level was not negligence on the part of defendant.

Hatch, J., dissenting.

Appeal from trial term, New York county.

Action by Sarah A. Frounfelker against the Delaware, Lackawanna & Western Railroad Company. From a judgment for plain-

tiff, and from an order denying a new trial, defendant appeals.  Reversed.

See 76 N. Y. Supp. 745.

Argued before VAN BRUNT, P. J., and HATCH, O'BRIEN, and INGRAHAM, JJ.

Hamilton Odell, for appellant.

Thomas P. Wickes, for respondent.

INGRAHAM, J.  This case was before this court on a former appeal.  48 App. Div. 206, 62 N. Y. Supp. 840.  The deceased, plaintiff's husband, was a conductor in charge of a freight train upon the defendant's road, and, as the result of a collision between the deceased's train and one following it, he was killed on the morning of October 3, 1896.  There does not seem to be any serious dispute of fact, and the main question presented is whether there is any evidence to justify a finding of the jury that the defendant was negligent, or that the plaintiff was free from contributory negligence. The train of which the deceased was conductor consisted of coal cars, with a caboose for the use of the train hands at the rear of the train.  This caboose was attached to the train in the usual manner, and was furnished with what were called "bumpers," designed to be opposite to similar bumpers upon the freight car in front, to protect the cars in case of their being forced together.  The bumpers upon the caboose were 14 inches deep and 9 inches wide, while the bumpers upon the coal car were 8 inches deep and 12 inches wide. The bumpers upon the caboose and the freight car were not exactly on an equal level; the top of the bumper upon the freight car being about 3½ inches above the top of the bumper upon the caboose; there being, however, at least 4½ inches of the surface of these bumpers upon the two cars opposite each other; and it is upon this inequality that the plaintiff relies to charge the defendant with negligence.  The evidence is undisputed that all of the cars upon the defendant's road were constructed in a like manner, and there is no evidence that the injury to the deceased was caused by this inequality in the level of the bumpers, or if they had been exactly level the accident would not have happened just as it did.  Nor was there any evidence that the cars in general use were furnished with bumpers other than those in use upon the defendant's road, or that there were other appliances in common use, the adoption of which would have avoided this accident.  The deceased had been in the employ of the defendant as a conductor upon freight trains of this character for many years, was presumably familiar with the construction of these cars, and this train was made up in the usual manner.  It appears that shortly after 6 o'clock on the morning of October 3, 1896, the train in charge of the deceased was stopped at a little to the west of a station on the road called "Stroudsburgh," because of a train being ahead of it; that from 5 to 12 minutes after it had stopped a following train appeared around a curve at the rear of the deceased's train; that, as soon as the deceased's train was seen by the engineer of the approaching train, every effort was made to stop the train, and the approaching train had almost stopped

when the engine struck the caboose of the deceased's train. The impact caused the caboose to run under the coal car in front, and the deceased, who was sitting at his desk in the caboose, was caught between the cars and killed. Neither the freight car nor the locomotive of the colliding train were injured, the only injury being to the caboose. Although the deceased's train had stopped upon the main track from 5 to 12 minutes, the deceased appears to have remained in the car, sitting at the desk provided for the use of the train conductor, and it does not appear that he did anything to avoid a collision. The engineer of the colliding train was called as a witness for the plaintiff, and testified that at the time of the accident his train was running about eight miles an hour; that there was a curve from 250 to 300 feet west of the rear car of the deceased's train; that as his locomotive came around this curve he saw the caboose of the deceased's train; that as soon as he was in a position to see this caboose he saw it, and tried to stop the train; that at the time his engine hit the caboose the train had almost stopped, so that the headlight of the locomotive was not broken; that he did not see a brakeman from the deceased's train; that he had commenced to slow up for the station before he saw the train. Lyman, the fireman on this train, was also called as a witness for the plaintiff, and testified that he was on the engine at the time; that he saw the brakeman just as they were rounding the curve; that as soon as he saw the brakeman they stopped the train the best they could; that the brakeman was between 200 and 300 feet from the deceased's train when the fireman first saw him; that the caboose upon the deceased's train was lifted up by the pilot of the engine in consequence of the collision. This lifting up of the rear of the caboose would naturally have the effect of lowering the other end so as to force it under the freight car in front, and no bumpers or other appliances, so far as the evidence discloses, could prevent that result. There was also evidence that from time to time the defendant made up time-tables showing the time of the various trains upon the road; that these tables were issued to all of the conductors of the road, and had printed upon them certain rules and regulations, imposing upon the conductors and other employés certain duties to avoid collisions of this character. While there is no witness who testifies that he personally handed to this conductor a time-table containing these rules and regulations, the fact that they were constantly issued by the company to the conductors to guide them in the performance of their duties, and certain officials of the defendant were especially charged with the duty of delivering these time-tables to the conductors, whose duty it was to receive them and to run their trains by them, is presumptive evidence that the deceased had received the time-tables, and was familiar with the rules and regulations of the company printed thereon. 48 App. Div. 206, 62 N. Y. Supp. 840. The material rules are as follows:

"Rule 2. All employés of the company are expected and required in all cases to exercise the greatest care and watchfulness to prevent injury or damage to person or property. Vigilance and watchfulness insures safety. In all cases of doubt adopt the safe course.

"Rule 3. When a train is required to stop between stations from any cause, or is compelled to proceed at a slow rate of speed, or is required to stand at a station longer than the usual time, for any purpose, the flagman must immediately go back one-half a mile with danger signals * * * to stop any train or engine which may be following."

Rule 4 provides for the placing of torpedoes on the rail and for signaling an approaching train. Rule 6 provides:

"Conductors and engineers will be held strictly responsible for the prompt enforcement of this rule, and are required to carry out these instructions whenever and wherever their trains are stopped or delayed on the main track, day or night. They have no right to presume that other trains are not closely following or approaching."

The deceased's train, which was an extra train, had stopped on the main track between stations. The deceased was required to see that a flagman immediately started to go back half a mile and adopt the precautions provided for by rules to stop approaching trains. It is undisputed that this flagman did not obey this rule. The evidence of the plaintiff's witnesses shows that at the time the colliding train appeared around the curve, from 250 to 400 yards west of the rear of the deceased's train, and which was from 5 to 12 minutes after the train had stopped, the flagman was first seen from 200 to 250 feet behind the deceased's train. There is no evidence that the deceased left the caboose at all after his train had come to a stop. The flagman had, by the undisputed testimony, over 5 minutes from the time the train stopped, and during that time had only gone back from 200 to 250 feet. By the rule, the deceased was required to carry out these instructions whenever and wherever his trains were stopped or delayed on the main track, day or night. The conductor was thus distinctly charged with the duty to see that this rule was enforced, and that the flagman at once started back to prevent an approaching train from colliding with his train. This rule was not obeyed, and, as it was the duty of the deceased to enforce this rule, he certainly was guilty of neglect in the performance of his duty,—a neglect which was the direct cause of the collision. Had this flagman got around the curve, so that he could be seen by the approaching train a short distance before he was seen, the train would have been stopped in time to avoid the collision. Had a person not an employé of the defendant been injured by this collision, this act of the conductor, upon the plaintiff's evidence, would have been negligence for which the company would have been responsible; and, as he alone suffered from the result of the collision, I can see no escape from the conclusion that it was his negligence—negligence in failing to obey this explicit rule of his employer, by which he was charged with seeing that a brakeman at once performed his duty—that was the approximate cause of the injury. The burden is on the plaintiff to prove that the deceased was free from negligence that contributed to the injury, and it seems to me that not only has the plaintiff failed to support that burden, but that the facts are capable of but one construction; and that is that the proximate cause of the collision was the negligence of the deceased and the flagman properly to comply with the rules of the

company formulated for the purpose of preventing a collision, and endangering the lives of the employés of the company and passengers upon its trains. The employés of railroad companies, managing these modern railroads, with trains of great weight, running at a great speed, should certainly be held to a strict accountability for a failure to comply with the rules and regulations which are necessary to the safe conduct of the business in which they are employed; and where the railroad companies have formulated proper rules and regulations to protect their employés and passengers from accidents, and the railroad companies, as to third parties, are held liable for a failure of their employés to strictly enforce these rules, and an employé is injured because of his failure to comply with the rules, he can have no claim for compensation from the company whose rules he has willfully disobeyed or neglected to enforce. Nor do I think that in this case the evidence justified a finding that the defendant was guilty of negligence. The negligence of the defendant is predicated upon the fact that these buffers were not exactly on a level, so that there was 3½ inches of the buffer of the coal car above the buffer of the caboose; but the plaintiff's evidence, which is uncontradicted, was that 4½ inches of the buffer of these two cars met. Here was a light car, unloaded, placed between the approaching engine and the heavily loaded coal cars. Some part of the car must necessarily give way. The elevation of the rear of the caboose upon the pilot of the engine would cause the front of the caboose to be forced under the coal car; and there is no evidence from which an inference can be drawn that if these bumpers had met, so that the whole of the 8 inches, instead of 4½ inches, were in contact, the same result would not have followed. The right of the plaintiff to recover is based upon the case of Ellis v. Railroad Co., 95 N. Y. 546; but the fact in that case was that, although the cars were furnished with bumpers 10 inches thick, they were at such different elevations that, instead of meeting to receive the concussion, they exposed to the blow only a surface of three-quarters of an inch, and so overlapped each other that they were ineffectual for any useful or designed purpose. There were, in effect, no bumpers, or anything to take their place, on the car upon which the plaintiff's intestate was employed; and upon the evidence in that case it was said by the court of appeals that the absence of the bumpers was the proximate cause of the injury. There is no such evidence in this case.

I do not think, therefore, that the finding that plaintiff's intestate was free from negligence, or that the defendant was negligent, was sustained by the evidence. The judgment must therefore be reversed, and a new trial ordered, with costs to the appellant to abide the result.

VAN BRUNT, P. J., and O'BRIEN, J., concur. HATCH, J., dissents.